FILED

2014 Sep-09  PM 12:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **GWENDOLYN ALFORD,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 4:12-CV-2829-VEH** |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION[1]

## I.      Introduction

Plaintiff Gwendolyn Alford ("Ms. Alford") initiated this social security appeal

on August 28, 2012. (Doc. 1). This matter is before the court on the objections (Doc.

15) of Ms. Alford to Magistrate Judge John E. Ott's report and recommendation (the

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security."). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the officer of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

"R&R") (Doc. 14),[2] which proposes that the decision of the Commissioner be affirmed and that Ms. Alford's Motion To Remand (Doc. 11) (the "Motion") filed on May 8, 2014, be denied. (Doc. 14 at 1).

The parties have filed briefs relating to Ms. Alford's appeal. (Docs. 6-8). The Commissioner filed a response to the Motion on May 13, 2014. (Doc. 12).

The R&R was entered on July 25, 2014. (Doc. 14). Ms. Alford's objections were filed on August 8, 2014. (Doc. 15). This case was randomly reassigned to the undersigned judge on August 12, 2014. (Doc. 16). The Commissioner responded to Ms. Alford's objections on August 22, 2014. (Doc. 18). Finally, Ms. Alford, on August 27, 2014, followed with a reply. (Doc. 19).

The matter, therefore, is now under submission, and for the reasons explained below, the court **OVERRULES** Ms. Alford's objections, and **ACCEPTS** the R&R as minimally modified below. Consequently, the Commissioner's decision is due to be **AFFIRMED**, and Ms. Alford's Motion is due to be **DENIED**.

II.    **Standards**

A.    **Social Security Appeals**

The court's review of the Commissioner's decision is narrowly circumscribed.

---

[2] The parties have not consented to the jurisdiction of the magistrate judge. Therefore, in accordance with 28 U.S.C. § 636(b), the magistrate judge entered a report and recommendation.

The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*, because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## B.    District Court Review of Report and Recommendation

After conducting a "careful and complete" review of the findings and

recommendations, a district judge may accept, reject, or modify the magistrate judge's report and recommendation. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."); *Williams v. Wainwright*, 681 F.2d 732 (11th Cir. 1982) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982), *overruled on other grounds by Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996)).[3] The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990) (citing H.R. Rep. No. 94-1609, 94th Cong., 2d Sess., reprinted in 1976 U.S. Code Cong. & Admin. News 6162, 6163). In contrast, those portions of the R&R to which no objection is made need only be reviewed for clear error. *Macort v. Prem, Inc.*, 208 F. App'x 781,

---

[3] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981, as well as all decisions issued after that date by a Unit B panel of the former Fifth Circuit. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n.4 (11th Cir. 2009) (discussing the continuing validity of *Nettles*).

784 (11th Cir. 2006).[4]

"Neither the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (internal quotation marks omitted) (quoting *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)). It is incumbent upon the parties to timely raise any objections that they may have regarding a magistrate judge's findings contained in a report and recommendation, as the failure to do so subsequently waives or abandons the issue, even if such matter was presented at the magistrate judge level. *See*, *e.g.*, *United States v. Pilati*, 627 F.3d 1360 at 1365 (11th Cir. 2010) ("While Pilati raised the issue of not being convicted of a qualifying offense before the magistrate judge, he did not raise this issue in his appeal to the district court. Thus, this argument has been waived or abandoned by his failure to raise it on appeal to the district court."). However, the district judge has discretion to consider <u>or</u> to decline to consider arguments that were

---

[4] *Macort* dealt only with the standard of review to be applied to a magistrate's factual findings, but the Supreme Court has held that there is no reason for the district court to apply a different standard to a magistrate's legal conclusions. *Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985). Thus, district courts in this circuit have routinely applied a clear-error standard to both. *See Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1373-74 (N.D. Ga. 2006) (collecting cases). This is to be contrasted with the standard of review on appeal, which distinguishes between the two. *See Monroe v. Thigpen*, 932 F.2d 1437, 1440 (11th Cir. 1991) (when a magistrate's findings of fact are adopted by the district court without objection, they are reviewed on appeal under a plain-error standard, but questions of law remain subject to *de novo* review).

5

not raised before the magistrate judge. *Stephens v. Tolbert*, 471 F.3d 1173, 1176 (11th Cir. 2006); *see also Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Thus, we answer the question left open in *Stephens* and hold that a district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

"Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court." *Nettles*, 677 F.2d at 410 n.8. "This rule facilitates the opportunity for district judges to spend more time on matters actually contested and produces a result compatible with the purposes of the Magistrates Act." *Id*. at 410. Indeed, a contrary rule "would effectively nullify the magistrate judge's consideration of the matter and would not help to relieve the workload of the district court." *Williams*, 557 F.3d at 1292 (internal quotation marks omitted) (quoting *United States v. Howell*, 231 F.3d 615, 622 (9th Cir. 2000)).

## III.   Analysis

Ms. Alford challenges the R&R on four different grounds, which all relate to her submission of evidence to the Appeals Council (the "AC") <u>after</u> the ALJ had rendered his decision that was adverse to her on December 22, 2010. Therefore, Ms. Alford has waived any contention that the ALJ's determination (without factoring in

her subsequently submitted evidence) was not supported by substantial evidence and, reviewing the R&R for clear error as to those portions without any objection pending, the court finds none and **ACCEPTS** all those parts of the R&R.

Regarding the magistrate judge's review of the AC's treatment of Ms. Alford's post-hearing decision proof, the court, after undergoing a *de novo* assessment, concludes that the record lacks any reversible error. The court addresses each contested area separately below.

**Ms. Alford Confuses The Framework Most Applicable To Her Motion.**

Ms. Alford first objects to R&R on the basis that the remand standard utilized by the magistrate judge is incorrect. Specifically, Ms. Alford suggests that *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987), sets forth the exclusive framework for her case. *See id.* ("In order to prevail on a claim that remand is appropriate, a claimant must establish that: '(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for failure to submit the evidence at the administrative level.'" (emphasis added) (quoting *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987))).

As the emphasized language makes clear, the *Hyde* remand standard most appropriately applies when a claimant is seeking to offer additional evidence that was

7

<u>never</u> submitted during the administrative phase. Here, however, Ms. Alford is complaining about the AC's treatment of her supplemental evidence which she <u>offered</u> at the administrative level. Accordingly, *Ingram v. Astrue*, 496 F.3d 1253, 1261 (11th Cir. 2007), provides the most fitting standard, and *Ingram* was correctly cited by the magistrate judge. *See id.* ("The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" (quoting 20 C.F.R. § 404.970(b))); (*see also* Doc. 14 at 15-16).

Further, *Ingram* embraces an erroneous-based test when evaluating the impact of proof properly submitted to the AC. *See id.* at 1262 ("When no new evidence is presented to the Appeals Council and it denies review, then the administrative law judge's decision is necessarily reviewed as the final decision of the Commissioner, but when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider <u>whether that new evidence renders the denial of benefits erroneous</u>.") (emphasis added).

Finally, the magistrate judge did reference *Hyde* within the R&R insomuch as the first two prongs of that standard apply equally under the framework for evaluating evidence submitted at the AC level. (Doc. 14 at 15). Consequently, for all these

reasons, the court **OVERRULES** Ms. Alford's *Hyde*-based objection.

### Dr. Wilson's Records While New,
### Are Neither Chronologically Relevant Nor Material,
### Especially Given His Status As Merely A Consultative Examiner.

Ms. Alford submitted a sizeable collection of evidence to the AC post-hearing. (Tr. 4-5). In her second objection, Ms. Alford maintains that the magistrate judge improperly dealt with Dr. David Wilson's ("Dr. Wilson") psychological evaluation of her dated February 23, 2011 (Tr. 494-97), and his related mental health source statement dated May 7, 2011. (Tr. 503-04). Dr. Wilson is not one of Ms. Alford's treating physicians and apparently only saw her once in his capacity as a consultative physician.

After seeing Ms. Alford on that one day, Dr. Wilson opines:

> **SUMMARY:**  Gwen has some significant medical problems which <u>likely could</u> cause major problems in her ability to function in a work environment. She also has <u>chronic pain and depression</u>, and this would also play a part in making it difficult for her to work. She does appear to be the kind of person who would certainly prefer to be working if she could, but the combination of all of her problems <u>may</u> make this very difficult.

(Tr. 497 (emphasis added)).

Dr. Wilson separately indicates that Ms. Alford is markedly restricted in her ability to follow a schedule, maintain regular attendance,  arrive punctually within customary tolerances, complete a normal workday and workweek without

interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 503). Within this same statement, Dr. Wilson finds several other areas in which Ms. Alford has either mild or moderate work-related restrictions. (Tr. 503-04).

In discussing this evidence, the magistrate judge stated:

> Dr. Wilson's Psychological Examination and Mental Health Statements are not chronologically relevant because they are based on an examination performed by Dr. Wilson in February 2011 and do not relate to the period on or before December 22, 2010, the date of the ALJ's hearing decision. Notably, although Dr. Wilson found that Alford suffered from "major depression, recurrent" (R. 497), he offered no opinion on when the alleged major depression began. His examination report and subsequent mental health statement reflect nothing more than his assessment of Alford's mental health as of February 2011, after the date of the ALJ's decision. *See Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 801-02 (11th Cir. 2008) (noting that three reports submitted by the claimant to the AC "came after [the date of] the ALJ's decision and, therefore, the AC does not consider them in determining whether to review the ALJ's decision").

(Doc. 14 at 16).

The court now must determine whether this evidence is new, chronologically relevant, and material. *Ingram*, 496 F.3d at 1261. These documents generated by Dr. Wilson are "new" in that they are not cumulative to the evidence that Ms. Alford presented to the ALJ. *Cf. Caulder v. Brown*, 791 F.2d 872, 877 (11th Cir. 1986) (holding that "new objective medical evidence" presented first to the AC was not

10

cumulative to the evidence proffered to the ALJ regarding the same underlying ailment).

Whether new proof is "chronologically relevant" and "material" is oftentimes an intertwined question. While Dr. Wilson's psychological evaluation and medical source statement were completed after December 22, 2010 – the date of the ALJ's disability determination, that temporal marker does not necessarily make the information chronologically irrelevant. *Cf. Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) ("[A] treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date." (citing *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981)), *superseded on other grounds by* 42 U.S.C. § 423(d)(5)).

Here, the court concludes that Dr. Wilson's records are chronologically irrelevant because the court cannot confirm that they "relate[] to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b). Dr. Wilson's psychological evaluation occurs a little over two months and his medical source statement issues within five months of the ALJ decision date.

While the psychological evaluation indicates that Ms. Alford suffers from "recurrent" major depression (Tr. 497), nowhere within this report is this repeating depression tied to a time period occurring prior to the ALJ's decision. Instead, Dr.

11

Wilson's summary of Ms. Alford's periods of taking medications for depression and anxiety include no temporal indicators other than "coming off the Celexa for about a month . . . ." (Tr. 494). Further, in terms of Ms. Alford's longitudinal mental history, Dr. Wilson reports that she "has not had any mental health treatment nor [has] been admitted to a psychiatric hospital."

The medical source statement similarly lacks any indication about what time period Dr. Wilson is capturing in his assessment of Ms. Alford. Finally, Dr. Wilson's post-hearing opinion is distinguishable from one that is provided by a treating physician, which within the Eleventh Circuit (and other sister circuits) is, at times, entitled to significant weight. *See, e.g., Boyd*, 704 F.2d at 1211 ("Because the burden of proving disability is so great, the claimant must be allowed to introduce the testimony of her treating physician even though that relationship was not established until after the relevant period before December 31, 1975."). *But see Kirkland v. Weinberger*, 480 F.2d 46, 49 (5th Cir. 1973) (rejecting treating physician's "totally disabled" opinion provided post-hearing "not only [as] not supported by any clinical or laboratory findings but [also] [a]s directly contrary to the same doctor's hospital admission history").

As for the factor of materiality, because there is a significant underlying gap between Dr. Wilson's findings and whether they have any bearing on Ms. Alford's

condition during her relevant disability period between July 31, 2006, and December 20, 2010 (Tr. 40), the post-hearing proof is likewise immaterial. In other words, the court finds an absence of a "reasonable possibility" that the new evidence provided by Dr. Wilson, <u>even if credited</u>, would persuade the ALJ in this case to reverse his decision. *Hyde*, 823 F.2d at 459. Therefore, for all these reasons, the court overrules Ms. Alford's Dr. Wilson-based objection.

**The Post-Hearing Statements
Provided by Treating Sources Drs. Smith and Chindalore
Are Arguably New And Chronologically Relevant, But Immaterial.**

Ms. Alford next objects to the magistrate judge's treatment of the medical source statements provided by her treating providers, Dr. Vishla Chindalore ("Dr. Chindalore") (Tr. 498-99) on March 23, 2011, and Dr. Kenny Smith ("Dr. Smith") (Tr. 585-86) on May 8, 2012. Dr. Chindalore's source statement issues a little over three months and Dr. Smith's about a year and a half after the ALJ decision date. Ms. Alford also submitted to the AC treatment notes related to these doctors. (Tr. 505-08 (Dr. Smith), 509 (Dr. Chindalore), 510-84 (Dr. Smith)).

In addressing these medical source statements, the magistrate judge reasoned:

> Although both opinions are chronologically relevant, they are not material. In addition to the fact that neither opinion references any specific medical findings, the determinations by Dr. Chindalore and Dr. Smith that Alford is "disabled" are determinations reserved for the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) ("We [the

13

Commissioner] are responsible for making the determination or decision about whether you [the claimant] meet the statutory definition of disability."). A medical opinion that a claimant is disabled is not given "any special significance" by the Commissioner. 20 C.F.R. § 404(d)(3). As the Eleventh Circuit has stated, "we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinions of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Because Dr. Chindalore's and Dr. Smith's opinions provide <u>no analysis of any medical findings and simply provide the doctors' opinions of the legal consequences of Alford's condition</u>, the court finds that they do not create a "reasonable possibility" of changing the ALJ's decision and therefore are not material.

(Doc. 14 at 17 (emphasis added)).

The court concludes that the opinions provided by Drs. Chindalore and Smith are arguably new because they are, at least, somewhat non-cumulative when compared with their earlier opinions that were before the ALJ at the time of his decision. (*Compare* Tr. 498-99 (Dr. Chindalore's second source statement), Tr. 585-86 (Dr. Smith's second source statement), *with* Tr. 418 (Dr. Chindalore's initial source statement), Tr. 458 (Dr. Smith's initial source statement)). They are also chronologically relevant as they expressly reference time frames that predate the ALJ's decision. However, the court deviates from the magistrate judge's suggestion that they lack materiality because neither new treating source opinion references <u>any</u> supportive medical findings.

14

For example, Dr. Chindalore indicates that Ms. Alford "cannot lift, bend, sit/stand for prolonged periods" (Tr. 498). Further, Dr. Chindalore's source statement is supported by his underlying treatment notes made during Ms. Alford's follow-up visit on March 23, 2011, which lists fibromyalgia (one of Ms. Alford's impairments which the ALJ found to be severe (Tr. 31)) as her chief complaint. (Tr. 509). Other conditions listed are arthralagias,[5] myalgia,[6] and joint pain. *Id.* This record also reflects that Ms. Alford "is not doing well[,]" "is hurting all over[,]" and "has severe pain in multiple joints." (Tr. 509). Dr. Chindalore notes that Ms. Alford has been on a regimen of "Cymbalta, Lortab and Flexeril combination." *Id.* On this visit, Ms. Alford received a shot of Toradol for her fibromyalgia and a refill on her prescription for Cymbalta to address joint pain. *Id.*

However, despite the presence of some supportive medical findings, the court nevertheless agrees with the R&R that the post-hearing opinion provided by Dr. Chindalore does not meet the materiality standard because, akin to the situation in *Kirkland*, the full record reveals discrediting contradictions between Dr. Chindalore's initial and subsequent source statements, on the one hand, and her underlying

---

[5]   Merriam-Webster online defines "arthralgia" as "pain in one or more joints[.]" *See* http://www.merriam-webster.com/medical/arthralgia.

[6]   Merriam-Webster online defines "myalgia" as "pain in one or more muscles[.]" *See* http://www.merriam-webster.com/medical/myalgia?show=0&t=1409691639.

15

treatment notes, on the other. As the magistrate judge explained:

> The ALJ also addressed the opinion expressed by Alford's rheumatologist, Dr. Chindalore, in August 2010 that Alford's fibromyalgia pain was "severe." (R. 38, 418). The ALJ did not find Dr. Chindalore's assessment to be a credible rating of Alford's level of pain as managed with medication and thus afforded the assessment little weight. (R. 38). <u>The ALJ noted that Dr. Chindalore had not prescribed any narcotic pain medications for Alford until July 2010 and that there was no record of any follow-up by Dr. Chindalore to determine whether the low dose of narcotic she had prescribed (Lortab 5) was insufficient to manage Alford's pain.</u> (*Id.*).

(Doc. 14 at 13 (emphasis added)); (*see also* Tr. 34 ("On January 7, 2010, the claimant saw Dr. Chindalore for a follow-up appointment, and reported that she was doing reasonably well on her current therapy, with a little bit of pain in her thumbs and neck (Exhibit 12 F).")).

Therefore, given the ALJ's thorough explanation for discrediting Dr. Chindalore's August 2010 opinion about Ms. Alford's severe pain attributable to fibromyalgia and the absence of any effort by Dr. Chindalore to rebut the ALJ's reasoning in her subsequent March 2011 opinion, the court finds no "reasonable possibility" exists that the new evidence provided by Dr. Chindalore would persuade the ALJ to reverse his decision in this case. *Hyde*, 823 F.2d at 459; *cf. Hayes v. Colvin*, No. 4:12-CV-0809-VEH, 2013 WL 4804222, at *4 (N.D. Ala. Sept. 6, 2013) ("Dr. Lachman's subsequent patient history summary is non-cumulative as it <u>not only</u>

addresses the ALJ's criticisms of her initial medical source opinion, but also it analyzes certain categories of work-related abilities that were not covered in Dr. Lachman's first vocationally-related opinion.").

The court reaches a similar conclusion in its consideration of Dr. Smith's records. Here, the court assumes without deciding that the underlying treatment documents provided by Dr. Smith for the time period from August 1991 through August 2010 are sufficient to support Dr. Smith's post-hearing opinion issued on May 8, 2012, that Ms. Alford has been severely impaired since 2009 from the following collection of impairments: asthma, COPD, rheumatoid arthritis, fibromyalgia, diabetes, hypertension, and carpal tunnel syndrome. (Tr. 585).

Even so, the materiality standard is not met for several other reasons. First, akin to *Kirkland*, Dr. Smith's severely disabled since February 2009 opinion is contradicted by his own notes. More specifically, and as the ALJ expressly observed (Tr. 34), on August 10, 2009, Dr. Smith's records reflect that Ms. Alford reported to him that she had "good days and bad days." (Tr. 481). This type of notation significantly undermines Dr. Smith's sweeping post-hearing disability opinion, especially because he offers no explanation which reasonably reconciles this apparent divergence in Ms. Alford's degree of limitation due to pain caused by her multiple impairments.

17

Second, at the time Ms. Alford's case was before the ALJ, he already had a host of chronologically relevant records from Dr. Smith, including a response dated September 7, 2010, to a written inquiry from an administrative disability specialist indicating that Ms. Alford experiences "SEVERE" pain due to carpal tunnel syndrome and fibromyalgia. (Tr. 458). Because the earlier opinion from Dr. Smith is consistent with his subsequent one which comparably found that Ms. Alford suffers from severe pain based upon her collection of medical conditions, it is unlikely that the ALJ would alter the administrative result on account of this second, more developed, but yet still similar, source statement.

Third, the ALJ's grounds for discrediting Dr. Chindalore's initial source statement also raises serious doubts as to the foundation for of Dr. Smith's new pain-related opinion. In particular, Dr. Smith's post-hearing statement is silent about the impact of Ms. Alford's efforts to manage her pain symptoms through a low dosage of Lortab prescribed in July 2010. In fact, Dr. Smith's opinion appears to contradictorily indicate that Ms. Alford "avoids pain medications."[7] (Tr. 586).

As for the underlying treatment records from Dr. Smith that were submitted to the AC, the court agrees with the R&R that they are either cumulative because the

---

[7] The third handwritten word on this treatment record is difficult for the court to fully decipher, but "medications" is consistent with the letters that are legible and makes sense contextually.

ALJ already had access to them at the time of his decision or chronologically irrelevant/immaterial because they do not bear upon Ms. Alford's status for the time period covered by the ALJ's decision. (Doc. 14 at 17-18). Therefore, for all these reasons, the court **OVERRULES** Ms. Alford's treating source objections relating to Drs. Chindalore and Smith.

## A Remand Under *Epps* Is Inappropriate.

Ms. Alford's fourth objection is tied to the magistrate judge's purported erroneous application of *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980). However, Ms. Alford's garbled objection poorly conveys the meaning of *Epps*. (Doc. 15 at 3-5). To be clear, *Epps* only requires a remand for the perfunctory treatment of post-hearing evidence by the AC when such proof is (1) new, (2) chronologically relevant, and (3) <u>material</u>. On the other hand, if one or more of these three criteria are not met, then the claimant's proof is not "properly present[ed]" to the AC, *Ingram*, 496 F.3d at 1262, and a remand pursuant to *Epps* is not triggered <u>even if the AC acts perfunctorily</u>.

Consequently, because the court agrees with the R&R that none of the post-hearing evidence relied upon by Ms. Alford in her objections meets the materiality threshold or otherwise satisfies the *Ingram* three-part test, a remand pursuant to *Epps* is inappropriate. Therefore, the court also **OVERRULES** Ms. Alford's fourth

objection.

## IV.   Conclusion

For the reasons set out above, the court **OVERRULES** all of Ms. Alford's objections and **ACCEPTS** the R&R as modified slightly herein. Accordingly, the decision of the Commissioner is **HEREBY AFFIRMED**, and Ms. Alford's Motion is **HEREBY DENIED**. The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this the 9th day of September, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge